*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0059P (6th Cir.)
File Name: 04a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES KELLNER and LAURI
KELLNER, individually and as
next kin of Michael W.
Kellner, deceased; LAURI
KELLNER, individually and as
natural parent and next of kin
of Shawn June, a minor,
　　　　*Plaintiffs-Appellants,*

*v.*

BUDGET CAR AND TRUCK
RENTAL, INC., et al.; COMCAR
INDUSTRIES, INC., a/k/a M.D.
Transport Systems, Inc.,
　　　　*Defendants,*

CLAY HYDER TRUCKING
LINES, INC.; M.D. TRANSPORT
SYSTEMS, INC.; JOHN ZAFFER,
Administrator of the Estate of
Christopher N. Zaffer,
　　　　*Defendants-Appellees.*

No. 02-5314

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

No. 00-00336—Curtis L. Collier, District Judge.

Argued: September 17, 2003

Decided and Filed: February 26, 2004

Before: BOGGS, Chief Judge; KRUPANSKY and CLAY,
Circuit Judges.

---

## COUNSEL

**ARGUED:** Paul T. Gillenwater, GILLENWATER, NICHOL
& AMES, Knoxville, Tennessee, H. Forrest Horne, Jr.,
JONES, MARTIN, PARRIS & TESSENER, PLLC, Raleigh,
North Carolina, for Plaintiffs. Michael J. King, WOOLF,
McCLANE, BRIGHT, ALLEN & CARPENTER, Knoxville,
Tennessee, for Defendants. **ON BRIEF:** Paul T.
Gillenwater, GILLENWATER, NICHOL & AMES,
Knoxville, Tennessee, for Plaintiffs. Michael J. King, Tony
R. Dalton, WOOLF, McCLANE, BRIGHT, ALLEN &
CARPENTER, Knoxville, Tennessee, for Defendants.

---

## OPINION

---

KRUPANSKY, Circuit Judge. James and Lauri Kellner,
appearing individually and as next of kin, have appealed the
district court's summary dismissal of their negligence suit
against three party-defendants – John Zaffer, administrator of
the estate of Christopher Zaffer ("Zaffer"), M.D. Transport
Systems, Inc. ("MDTS") and Clay Hyder Trucking Lines, Inc.
("CHTL") – arising from a motor vehicle accident on the
Tennessee interstate. The Kellners have contended that
defendants negligently and proximately caused the accident

by leaving a tractor-trailer parked in the emergency "breakdown" lane along the shoulder of the interstate. For the reasons discussed below, this Court affirms the order of summary judgment.

On the morning of October 23, 1999, Christopher Zaffer was driving his tractor-trailer westbound on Interstate 40 in Jefferson County, Tennessee, when his rig began experiencing mechanical problems and became disabled.[1] Zaffer drove the vehicle into the emergency lane of the interstate and there is no dispute between the parties that both Zaffer's tractor and trailer were completely within the "breakdown" lane with no portion of the rig protruding into or overlapping onto the travel lanes of the interstate.[2]

Zaffer placed the orange-triangle warning devices required by Tennessee statute and federal regulation behind the tractor-trailer to signal to approaching traffic that his rig was disabled. The weather conditions were clear and the roadway was dry. The section of I-40 on which Zaffer's rig became disabled provided three lanes for motorists traveling either east or west. According to record testimony the tractor-trailer could be seen by approaching westbound motorists from a distance of at least 1,000 feet.

Zaffer was under or near the tractor-trailer, shortly before 3:30 p.m., when Diane Rupe was driving westbound on I-40 in a Ford truck with a 24-foot cargo box, rented from Budget Car & Truck Rental, Inc. ("Budget"). Behind the Ford truck, Rupe towed a minivan. In the passenger cab, along with Rupe, were her grandsons Michael Kellner and Shawn June, ages 1 and 10 respectively.

Tragically, the Budget truck driven by Rupe left the far right travel lane of traffic, moved into the emergency lane, and collided with Zaffer's parked tractor-trailer. As a result of the collision, Michael Kellner, Rupe and Zaffer were killed, while Shawn June sustained injuries requiring hospitalization.

On June 6, 2000, plaintiffs-appellants James and Lauri Kellner, the parents of Michael Kellner and Shawn June, filed a negligence complaint in the district court against MDTS and Comcar Industries ("Comcar"). Appellants later amended their complaint to add as defendants: Zaffer's estate, CHTL, Jeannie Denniston – the administrator of the estate of Diane Rupe – and State Farm Insurance Company ("State Farm"), Rupe's uninsured/underinsured motorist insurance carrier. On September 20, 2000, the parties agreed by stipulation to dismiss Comcar from the action.

On November 29, 2001, Zaffer, MDTS and CHTL filed a motion for summary judgment; State Farm filed a motion for summary judgment on December 14, 2001. On February 11, 2002 in a memorandum and order, the district court granted defendants' motions, concluding that, as a matter of law, the defendants' actions were not the proximate cause of the

---

[1] Zaffer owned the parked and disabled 1991 Freightliner commercial truck-tractor struck by Rupe. In 1999 Zaffer had leased his tractor to appellee M.D. Transport Systems and had begun hauling freight for MDTS; however, at the time of the accident Zaffer was hauling a load for defendant-appellee Clay Hyder Trucking Lines, Inc.

[2] Appellants contend that Zaffer's tractor-trailer was stopped one foot from the fog line which separates the travel lanes of the interstate from the emergency breakdown lane. The evidence indicates that the rig was *at least* one foot from the line and may, perhaps, have been further, but the impact of the accident moved the truck several feet making estimations difficult.

appellants injuries and damages.[3]   On February 25, 2002, appellants filed a timely notice of appeal to this Court.[4]

This Court reviews *de novo* the order granting summary judgment to appellees Zaffer, MDTS and CHTL. *See Virts v. Consolidated Freightways Corp. of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002).

As the forum state, Tennessee precedent provides that a plaintiff bringing a negligence action must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Bennett v. Putnam County*, 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000) (*quoting*

---

[3]The plaintiffs did not respond to State Farm's motion for summary judgment. State Farm's potential for liability rested solely on the testimony of a witness who speculated that Rupe had to take evasive action to avoid a vehicle swerving toward Rupe on her left and causing her to strike the tractor-trailer. This testimony was later recanted by the witness as pure speculation and no corroborating testimony emerged to support the witness's earlier statement. Because the plaintiffs did not contest State Farm's position the court granted the State Farm motion and dismissed State Farm from the lawsuit. See E.D. TN. LR 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.").

[4]On March 22, 2002, because there were other claims and cross-claims remaining for adjudication in the instant case, the Clerk of the Sixth Circuit entered an Order for the plaintiffs to show cause why their appeal should not be dismissed for lack of a final appealable order. The show cause order was withdrawn on May 6, 2002 after the district court approved a settlement of all remaining claims in the action, leaving the only remaining issues in the case as those between appellees and appellants. *Gillis v. United States Dep't of Health and Human Serv.*, 759 F.2d 565, 568-69 (6th Cir. 1985) (an appeal from an order disposing of fewer than all claims in a civil action invokes appellate jurisdiction if final judgment is entered in the underlying action during the pendency of the appeal).

*McClenhan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991)). *See also McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). Recovery in a negligence action may occur only if the plaintiff can prove that the defendants' conduct was negligent and was the proximate cause of plaintiffs' injury. *Tennessee Trailways, Inc. v. Ervin*, 438 S.W.2d 733, 735 (Tenn. 1969); *Lancaster v. Montesi*, 390 S.W.2d 217, 220 (Tenn. 1965). Tennessee courts have repeatedly stated that negligence is not presumed from the mere fact of an accident or injury. *Williams v. Jordan*, 346 S.W.2d 583, 586 (Tenn. 1961); *De Glopper v. Nashville Ry. & Light Co.*, 134 S.W. 609, 611 (Tenn. 1911); *Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn.Ct.App.1992).

In the instant case, the district court determined that as a matter of Tennessee law a reasonable jury could conclude that Zaffer had breached his duty by not moving the rig to a safer location in the five hours prior to the accident. However, in granting the motion for summary judgment the court concluded that, as a matter of law, none of the movants – Zaffer, MDTS, or CHTL – provided the proximate cause of the accident.

Based upon the undisputed facts that Zaffer's rig rested completely off the active traffic lanes of the interstate and was plainly visible for a distance of over 1,000 feet, the district court reasoned that "a reasonable jury would have to conclude Rupe could see the rig prior to the accident." Consequently, the court concluded that Rupe's actions in leaving the travel lanes and crashing into Zaffer's rig were the proximate cause of plaintiffs' losses. In so deciding, the court relied upon *Carney v. Goodman*, 270 S.W.2d 572, 576 (Tenn. Ct. App. 1954), which concluded that "the negligence of one in obstructing the highway by a standing vehicle was superseded by another's negligence in running into such vehicle, and that the latter's negligence was the proximate cause of the accident." *See also Dunnivant v. Nafe*, 334 S.W.2d 717, 719

(Tenn. 1960). Thus, in the instant case, while the district court concluded that a reasonable jury could find Zaffer negligent in not removing his rig from the shoulder of the interstate before the accident occurred, the court nevertheless held that plaintiff Rupe had provided the proximate cause pursuant to the standard determined in *Carney*: "Did the driver running into the standing vehicle see it in time to enable him, by use of due care, to avoid the collision? If he did not, his negligence is merely a contributory cause; if he did, his negligence is the proximate cause." *Carney v. Goodman*, 270 S.W.2d at 576.

Further, the district court stated that through *Carney* "Tennessee [has] adopted a special rule about proximate causation in standing vehicle cases such as the present one." While the general rule in Tennessee, that the foreseeability of an intervening, superseding act presents a jury question, the *Carney* court adopted a special rule in standing vehicle cases, which the district court applied in the present case, noting that "[u]nder this rule it is unforeseeable as a matter of law someone would drive into a plainly visible standing vehicle." The *Carney* opinion noted that "[t]he operator of a vehicle that crashes into a vehicle negligently left standing in an unsuitable stopping place provides the proximate cause of any resulting injuries if she could see the standing vehicle in time to avoid a collision." *Id.*

On appeal, the plaintiffs aver that summary judgment is inappropriate in the instant case where facts regarding the foreseeability requirement of proximate causation are in dispute. Specifically, the appellants maintain that Zaffer's negligence was the proximate cause of the tragic accident because, by parking his disabled vehicle on the shoulder of the interstate and not moving it during the five hours preceding the accident, Zaffer could foresee through the exercise of reasonable diligence that injury or loss could or would occur. However, appellants' reliance upon such a broad definition of foreseeability fails to comport with

Tennessee negligence law and, consequently, fails to prove that the district court erred in granting summary judgment to appellees.

Pursuant to Tennessee negligence law, once it is determined that the defendant owed the plaintiff a legal obligation to conform to a reasonable person standard of conduct, i.e., a duty--the question becomes whether defendant failed to exercise reasonable care under the circumstances, i.e., whether defendant breached the duty. In a negligence action, the standard of conduct is always the same. It is a standard of reasonable care in light of the apparent risk. *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 428 (Tenn. 1994) ("As in all cases, there is a duty to exercise reasonable care under the circumstances."); *Bradshaw v. Daniel*, 854 S.W.2d at 870 ("All persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others."). If defendant does not exercise reasonable care, defendant has breached the duty. *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992).

Upon this court's review, the record evidence indicates that, contrary to the district court's determination, Zaffer did not breach any duty of care. Tennessee has codified the standard of care for parking a disabled vehicle by making certain conduct illegal and by requiring drivers of commercial vehicles to take certain safety precautions when their vehicles break down. Vehicles left standing on "any highway outside of a business or residential district" must be parked off of the "paved or main-traveled part of the highway" and must be positioned to allow "a clear view of [the vehicle] from a distance of 200 feet. Tenn. Code Ann. § 55-8-158 (1998)[5];

---

[5] § 55-8-158. Stopping or parking on roadways

(a) Upon any highway outside of a business or residential district, no person shall stop, park, or leave standing any vehicle,

*see also Fergus v. Action Cartage & Distrib.*, 1990 WL 43463, *6 (Tenn. Ct. App. April 17, 1990) (unpublished) (explaining the "main-traveled part of the highway" does not include the shoulder). Drivers of disabled commercial vehicles must place warning devices specified distances behind their vehicles. See Tenn. Code § 55-9-103. While neither Tennessee law nor federal regulations limit the amount of time a disabled commercial vehicle may remain on the side of a roadway, Tennessee statute permits vehicles to be towed only after they have been immobile or unattended for at least twelve hours. See Tenn. Code § 55-16-111 ("[A] vehicle may not be towed without authorization by the owner of the vehicle until twelve (12) hours have passed since it was first observed to be immobile or unattended unless such vehicle is creating a hazard.").

The district court found that none of the defendants breached a statutory or regulatory duty of care owed to the plaintiffs. The evidence disclosed that Zaffer did not violate any of Tennessee's traffic provisions relating to disabled vehicles. Additional testimony by the Tennessee Highway Patrol also indicated that, as a practice, they do not remove abandoned vehicles from the shoulder of the interstate until

---

whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle of not less than eighteen feet (18') shall be left for the free passage of other vehicles, and a clear view of such stopped vehicles shall be available from a distance of two hundred feet (200') in each direction upon such highway.

(b)(1) This section shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

Tenn. Code § 55-8-158.

---

forty-eight hours after the vehicles were first observed. Zaffer had been on the shoulder of the interstate no longer than five and a half hours according to the appellants' own expert and he had not abandoned the tractor-trailer.

However, the district court concluded that Zaffer had breached his common-law duty of care, predicated on its reading of *Maddux v. Bush*, No. 86-183-II, 1987 WL 4845 (Tenn. Ct. App. May 27, 1987) (unpublished). In *Maddux*, the court discussed the common law standard of care for a motorist who stops a vehicle *in the road*. *Maddux* opined that it was not necessarily negligent to temporarily stop a vehicle on a road for a legitimate purpose, but the driver had the duty to select a suitable stopping place and to give adequate warning to other motorists when necessary. According to *Maddux*, the suitability of a stopping place depended on a number of factors, including whether the vehicle was reasonably capable of being moved to a safer location.

In the instant case, the district court found a genuine issue existed with regard to whether Zaffer could have moved his rig to a safer location. However, this Court is persuaded otherwise and concludes that defendants' actions did not result in the breach of a duty of care. The question of whether a vehicle can reasonably be moved to a safer location should be asked when, as was the case in *Maddux*, the vehicle has been parked in a dangerous location such as in the roadway. The rule that gives rise to this question states that "a driver should not stop his vehicle in a dangerous place when it can be moved to safer one." *Id.* at *3 (*citing Barr v. Charley*, 387 S.W.2d 614, 616 (Tenn. 1954) (car with flat tire was left parked *partially in roadway* at night)).[6] Consequently, Zaffer

---

[6] *See also Carr v. Ozburn-Hessey Storage Co.*, 1996 WL 383295 (Tenn. Ct. App. July 10, 1996) (unpublished), in which the State appellate court dismissed a case similar to the one at bar, noting:

did not breach his common-law duty of care pursuant to *Maddux* when he parked his rig completely off the travel lanes, in a highly visible position, and placed warning devices behind his tractor-trailer in compliance with state regulations.

A breach of defendants' duty of care is an essential element of the Kellners' claim in this negligence action. Summary judgment is appropriate when an essential element of negligence is missing. *Doe,* 845 S.W.2d at 183. In this case, the Kellners presented no proof as to how the defendants breached their duty to maintain proper clearance on the travel lanes of the interstate when parking their disabled vehicle. In failing to do so, the Kellners have failed to prove an essential element of their negligence claim and cannot demonstrate a prima facie case of negligence. Consequently, this court concludes that, as a matter of law, defendants did not breach any statutory or common-law duty.

Moreover, consonant with the district court's determination, defendants' actions were not the proximate cause of the plaintiffs' injuries. To sustain proximate cause, a plaintiff must prove "(1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in

---

It is the opinion of this court that the undisputed facts establish that Ms. Carr's negligence was greater than that of Mr. Guffy. No reasonable jury could find that Mr. Guffy, who drove a heavily loaded truck approximately twenty to twenty-five miles per hour on an uphill slope from an almost complete stop, was more negligent than Ms. Carr, who failed to notice a fully lit tractor-trailer on a familiar, unobstructed stretch of highway in clear weather until it was too late to avoid crashing into it. The evidence that Ms. Carr's negligence was equal to or greater than that of Mr. Guffy is overwhelming. Reasonable minds could not differ as to the legal conclusions that must be drawn. Therefore, the issue of apportionment of fault was properly withdrawn from the jury and determined by the court as a matter of law.

which the negligence had resulted in harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." *McClenhan v. Cooley*, 806 S.W.2d at 775. *See also Lowery v. Franks*, 1997 WL 566114 (Tenn. Ct. App. Sept. 10, 1997) (unpublished) at *5. "[P]roximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Id.* *See also Waste Mgmt. Inc. of Tennessee v. South Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997) (discussing proximate cause as a policy decision by the judiciary to deny liability for otherwise actionable conduct by requiring courts to define the boundary of legal liability using mixed considerations of logic, common sense, justice, policy, and precedent).

The appellants rely upon the discussion of proximate cause and foreseeability in *Goodermote v. State of Tennessee*, 856 S.W.2d 715 (Tenn. Ct. App. 1993) for support of the proposition that the district court erred in applying the *Carney* test to the present case. Such reliance is, however, misplaced. *Goodermote* involved a single-car accident in which the vehicle veered off the highway and rolled down an embankment, injuring the plaintiff. In that case, the court concluded that the State's failure to install safety features along the highway was the proximate cause of plaintiff's injury because the State should have reasonably foreseen that a driver could leave the roadway and sustain injuries as a result of an omitted safety feature.[7] The court concluded that:

---

[7]The facts proving foreseeability included proof that industry standards had called for installation of the safety bars omitted by the State, proof that the State's own plans for construction of the highway in question called for the safety barriers, and proof that the State had notice of six accidents at the same location during the three years preceding the specific incident in *Goodermote*.

[T]he plaintiff is not required to show that the State could foresee the specific facts of the accident before plaintiff can recover . . . . It was necessary only that the plaintiff establish that the State could have foreseen the general manner in which the injury or loss occurred . . . There is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the nearest to the injury, provided it is a substantial factor in producing the end result . . . . We think that the evidence clearly shows that the negligence of the State in failing to follow its own plans regarding installing a safety barrier was a substantial factor in producing the injuries which the plaintiff sustained.

*Goodermote*, 865 S.W.2d at 72. While the *Goodermote* court correctly stated the *general* rule for determining proximate cause in Tennessee, pursuant to *Carney,* the State had adopted a *specific* rule for determining proximate cause and foreseeability in claims involving standing vehicles, such as the instant case. *Carney*, 270 S.W.2d at 63-64.

Appellants have further contended that since Zaffer could foresee the possibility that a car would leave its lane and strike his rig then his actions were the proximate cause of the accident. Appellants' broadly construed notion of foreseeability leads, however, to logical absurdities and fails to comport with Tennessee judicial precedent. Thus, under the appellants' scheme a driver legally traveling in her own lane, who is hit by another vehicle that crossed into that driver's lane, could be held liable for negligence because it was foreseeable that vehicles leave their lanes of traffic.

Tennessee precedent construes foreseeability more narrowly than plaintiffs suggest. In *Underwood v. Waterslides of Mid-America*, 823 S.W.2d 171, 180 (Tenn. Ct. App. 1991), the court discussed foreseeability in the context of a superseding, intervening cause:

The essence of the rule as to independent intervening cause is whether the subsequent successive acts and injuries were probable and therefore to be anticipated. . . . Our Supreme Court has explained that the test of liability under the law of intervening cause requires a person to anticipate or foresee what would normally happen; one is not required to anticipate and provide against what is unusual or unlikely to happen, or that which is only remotely possible.

*Id.* at 180. Pursuant to this standard, the district court correctly determined it was not foreseeable, within the meaning of Tennessee law, that Rupe, with an extended unobstructed view of Zaffer's tractor-trailer, would leave three travel lanes of interstate and strike the rig that was parked completely within the emergency breakdown lane.

The appellants have additionally argued that the district court erred in applying the *Carney* test because the subsequent decision in *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992), altered Tennessee negligence law by replacing contributory negligence with a system of comparative fault. Yet, as the Tennessee Supreme Court has emphasized, "the question is: assuming that both plaintiff and defendant have been found guilty of negligent conduct that proximately caused the injuries, was the *fault attributable to plaintiff equal to or greater than the fault attributable to the defendant*." *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). Because this court has determined that the defendants' actions were not negligent, the issue of comparative fault is inapplicable.

Moreover, in light of *Eaton's* directive, it is important to note that while the district court failed to consider comparative negligence in its determination, it did not need to do so because the district court *did not* conclude that Zaffer was "guilty of negligent conduct that proximately caused the injuries." *Id.* Instead it only concluded that a fair-minded

jury could have found that Zaffer's rig was reasonably capable of being moved to a safer location. This was a finding of a possible breach of duty and not a finding of proximate cause. Consequently, under *Eaton*, a comparative negligence analysis was not legally necessary to the district court's grant of summary judgment.

In light of the aforementioned, this Court concludes that the defendants' actions did not give rise to a breach of a duty of care and that as a matter of law Rupe's actions provided the proximate cause of plaintiffs' losses and, therefore, affirms the district court's grant of summary judgment.